# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**DAVID WELLINGTON,**

     **Plaintiff,**

**vs.**                                                    **No. 17 CV 00732 JAP/LF**

**FERNANDO DAZA,**
**SPECIAL AGENT MARSHALL,**
**SPECIAL AGENT HAND,**
**UNKNOWN NAME DOE 1,**
**UNKNOWN NAME DOE 2,**
**UNKNOWN NAME DOE 3,**
**UNKNOWN NAME DOE 4, and**
**UNKNOWN NAME DOE 5,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

In PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 40)

(Motion), Plaintiff David Wellington asks the Court to hold as a matter of law that a search

warrant authorizing the search of his residence was facially invalid. Plaintiff also asks the Court

to rule that Defendant Fernando Daza may not assert qualified immunity from Plaintiff's claims

under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments. *See* COMPLAINT

FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES (Doc. No. 1). Since the

undisputed evidence of record does not establish that Defendant Daza violated Plaintiff's First

and Fourth Amendment rights, the Court will deny the Motion.

I.      STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the opposing party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, the Court must "determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc*., 293 F.3d 1187, 1195 (10th Cir. 2002).

When the issue of qualified immunity is raised, the court analyzes a motion for summary judgment differently. "The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once qualified immunity is raised, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish that 1) the defendant violated a constitutional right and 2) the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel.,*

*Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.,* 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). But, if the plaintiff succeeds in carrying his two-part burden, the burden shifts to the defendant to show there are no remaining material issues of fact that would defeat qualified immunity. *Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

II.     BACKGROUND

A.      Stay of this Case

In this *Bivens*[1] action, Plaintiff claims that a search of his residence under a search warrant procured and executed by agents of the United States Internal Revenue Service (IRS) violated the First and Fourth Amendments of the United States Constitution. During the search, agents seized computers, electronic devices, electronic data, financial and legal documents, correspondence, tax literature, and a safe. Plaintiff alleges that Defendant Daza,[2] a Special Agent with the IRS Criminal Division (IRS CD), violated his constitutional rights because the search was based on a facially invalid, overbroad search warrant. (Compl. (Doc. No. 1) ¶ 18.)

On January 24, 2018, the Court granted Defendants' motion to stay this proceeding to allow the government to pursue its criminal investigation of Plaintiff and others. ORDER GRANTING DEFENDANTS' MOTION TO STAY TIME TO ANSWER AND TO STAY LITIGATION (Doc. No. 28). In the stay motion, Defendants asserted that a criminal investigation was initiated because the IRS believed Plaintiff was using "a variety of third party entities, including trusts and other entities, in furtherance of tax evasion." (Mot. (Doc. No. 17) at 2.) The Court granted a stay until April 1, 2018 but ordered Defendants to file a status report on

---

[1] *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing that damages are available under 42 U.S.C. § 1983 for claims against federal law enforcement officials).
[2] To date, Plaintiff has only served Defendant Daza with the summons and Complaint.

March 1, 2018. In the status report (Doc. No. 36), Defendants renewed the request for a stay of six months or until the criminal investigation is completed. In his response to the status report, Plaintiff asked the Court not to extend the stay and to allow him to discover the identity of unknown Defendants so Plaintiff could serve those Defendants.

The stay ended on April 1, 2018. *Id.* This Motion was filed on April 6, 2018. On April 9, 2018, the Court held a hearing and ordered Defendants to respond to the Motion. *See* DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 43). Plaintiff has filed a Reply brief. *See* PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL SUMMARY JUDGMENT MOTION (Doc. No. 44).

B.      Issuance of the Warrant; Motion for Return of Property

On March 10, 2017, Magistrate Judge William P. Lynch issued the warrant in Case No. 17-mr-0186 (Warrant Case). On March 14, 2017, IRS agents executed the warrant and a warrant return was filed on March 16, 2017 containing an inventory of items seized from Plaintiff's residence. (Warrant Case Doc. No. 3). On March 20, 2017, Magistrate Judge Karen B. Molzen granted Defendants' motion to seal the warrant application and affidavit. (Warrant Case Doc. Nos. 4 & 5.)

On April 18, 2017, Plaintiff filed a Motion for Return of Property Seized Under Warrant (Warrant Case Doc. No. 6). *See* Fed. R. Crim. P. 41(g). On October 10, 2017, Magistrate Judge Jerry H. Ritter denied the motion without prejudice for lack of jurisdiction to allow Plaintiff to file a civil action for return of his property or to amend the Complaint in this case. (Warrant Case Doc. No. 14.) Plaintiff appealed Magistrate Judge Ritter's ruling to the Tenth Circuit Court of Appeals, but the appeal was dismissed for lack of jurisdiction. *In the Matter of the Search of*

*2124 Altura Verde Ln. NE, Albuquerque, NM 87110, Wellington v. United States*, Case No. 17-2205 (10th Cir. Jan. 8, 2018).

Instead of filing a civil action or amending the Complaint, Plaintiff filed a motion to consolidate the Warrant Case with this case. Defendants responded that on February 20, 2018, all of Plaintiff's property had been returned; therefore, the motion had become moot. Finding that the Warrant Case and this case are "dissimilar in purpose and procedure" and that the issue had become moot, the Court denied the motion to consolidate. MEMORANDUM OPINION AND ORDER (Doc. No. 38).

C.     Causes of Action

In Plaintiff's FIRST CAUSE OF ACTION (Compl. ¶¶ 46–50), he claims that Defendant Daza and other agents, "collectively agreed to willfully and wantonly … pursue a search and invasion of plaintiff's privacy and seizure of property they knew would be unlawful." (*Id.* ¶ 47.) Plaintiff further alleges that all Defendants "conducted a general search and seizure, seizing items regardless of whether they were listed in the warrant or not." (*Id.* ¶ 48.) As a result, Plaintiff alleges that the Defendants willfully "violated his Fourth Amendment right to be free from unreasonable searches and seizures, and agreed and conspired with each other to do so." (*Id.* ¶ 49.)

In his SECOND CAUSE OF ACTION (Compl. ¶¶ 51–54), Plaintiff alleges that the seizure of his "computer/electronic records not only violated the Fourth Amendment, but even Fed. R. Crim. P. 41 itself."  (Compl. ¶ 52.) Plaintiff alleges that Defendant Daza "caused the electronic records to be copied for a later unrestricted search for anything at all." (*Id.* ¶ 53.) Plaintiff claims that the Defendants willfully "violated plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures by seizing the electronic equipment and intend on

continuing to violate the right by copying the electronic data for their later unrestricted browsing for absolutely anything at all." (*Id.* ¶ 54.)[3]

In the FIFTH CAUSE OF ACTION, Plaintiff claims that Defendant Daza and the other defendants "collectively agreed to wilfully (sic) and wantonly disregard any such limitations, and to search for and seize publications based solely on their content and ideas they expressed. The defendants obtained a warrant which contained language they knew left it entirely to the discretion of the searching agents what was to be seized, and they treated it like a general warrant." (*Id.* ¶ 60.)  According to Plaintiff, Defendants' actions were done "in plain and clear violation of First Amendment protected Free Speech and Press constitutional limitations." (*Id.* ¶ 61.) Plaintiff claims that Defendant Daza has retained the materials "in order (at least in part) [to] engage in censorship of the materials…. [i]n plain and clear violation of the First Amendment Free Speech and Press constitutional limitations." (*Id.* ¶ 62.)

In his SIXTH CAUSE OF ACTION (Compl. ¶¶ 63–65), Plaintiff alleges that the Defendants collectively agreed to willfully and wantonly "disregard any such limitations and search for and seize any and all information about plaintiff's 'contacts' and people he may know, regardless of purpose. This included family, friends, acquaintances, political affiliations, and anyone plaintiff might know for any purpose." (*Id.* ¶ 64.) In addition, Plaintiff claims that "defendants obtained and executed a warrant which contained language they knew was not anywhere near narrow enough to comply with the precision required by the First Amendment

---

[3] In the THIRD CAUSE OF ACTION (Compl. ¶¶ 55–56), Plaintiff contends that the agents who executed the warrant unreasonably patted him down for weapons in violation of plaintiff's right to be free of unreasonable searches. In the FOURTH CAUSE OF ACTION (Compl. ¶¶ 57–58), Plaintiff accuses the executing agents of restricting his liberty to move about as he wished in violation of his Fourth Amendment rights. (*Id.*) Since the Third and Fourth Causes of Action do not involve the validity of the warrant, they are not subject to the Motion.

when Associational rights are involved. They then treated it like a general warrant, seized whatever they liked, and turned over the seized items to defendant Daza." (*Id.* ¶ 65.)

      D.      WARRANT

          1.      Undisputed Material Facts

The SEARCH AND SEIZURE WARRANT (warrant) states "[a]n application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the … District of New Mexico See Attachment A." Attachment A contains a legal description of the residence, describes the residence by color, and has pictures of the residence. (Compl. Ex. A, Attachment A.) In the warrant, Magistrate Judge Lynch found "that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above [in Attachment A], and that such a search will reveal … the property to be seized [described in] Attachment B." (*Id.*)

Attachment B contains an in outline of items subject to seizure:

I. Items to be Seized.

> The following items, records, documents, files or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or types); photocopies … electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, flash drives, external and internal hard drives, or electronic notebooks, or any other storage medium, are to be seized and searched for the evidence, fruits and instrumentalities of crimes relating to violations of 26 U.S.C. § 7201 (Attempt to Evade Taxes)[4] and 18 U.S.C. § 371 (Conspiracy [to Defraud the United States]),[5] for the time-period of January 1, 2005, through the present, to specifically include:

---

[4] "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony[.]" 26 U.S.C.A. § 7201.
[5] "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned[.]" 18 U.S.C.A. § 371.

1.  Books and records pertaining to National Business Services, New Mexico Limited Liability Companies (NM LLCs), Stacy Underwood, David Wellington, Jerry Schrock, Michelle Schrock or associated companies/parties;

> a)  Originals and copies of all income tax returns and their associated forms, work papers, information sheets and taxpayer records.
>
> b)  Business income and expense records such as receipt books, journals, ledgers, billing records and invoices, and receipts, deposit slips, cancelled checks, bank statements, payroll records, cash receipts and cash expense journals, worksheets, schedules, cashier checks, money orders, investment accounts, financial statements, income statements, balances (sic) sheets, trial balances, accounting records, records of purchases and revenues received, and payroll records.
>
> c)  Bank, financial institution, and investment account records, checkbooks, statements, deposit slips, canceled checks, cashier's checks, loan records, financial statements, credit reports, records of wire transfer, and keys to safe-deposit boxes.
>
> d)  Documents constituting, listing or describing domestic trusts, limited liability companies (LLCs) or other foreign entities created on behalf of any of the above mentioned individuals or businesses, including articles of incorporation, articles of organization, operating agreements, certificates or licenses of incorporation, bylaws, corporate resolutions, trust agreements, lists of directors, officers, managers or trustees and abstracts of memoranda.
>
> e)  Correspondence between the above mentioned individuals or businesses, and accountants, bookkeepers or other business associates. Address books, phone books, personal calendars, daily planners, journals, itineraries, rolodex indices and contact lists.
>
> f)  All copies of Internal Revenue Service publications and documents, including correspondence, manuals, and notices.
>
> g)  Tax defier paraphernalia[6] to include books, instruction manuals, and how to pamphlets.

---

[6] In the Motion, Plaintiff argues that the concept of "tax defier paraphernalia" is a vague, undefined term and therefore, what is seized under this description was left "solely to the executing agent's discretion." (Mot. at 10.) The Court disagrees. The word "defier" is defined as "one that defies." *See* https://www.merriam-webster.com/dictionary/defier?src=search-dict-hed (last visited on May 14, 2018). The term "paraphernalia" is defined as "personal belongings" or "articles of equipment." https://www.merriam-webster.com/dictionary/paraphernalia (last visited May 14, 2018). In the warrant's outline, "tax defier paraphernalia" is under the general heading of items related to tax evasion or conspiracy and under the subheading of "[b]ooks and records pertaining to National Business Services, New Mexico Limited Liability Companies, Stacy Underwood, David Wellington, Jerry Schrock, Michelle Schrock or associated companies/parties[.]" (Compl. Ex. A, Attachment B.) Therefore, an agent's discretion to seize tax defier paraphernalia, that is articles about defying tax laws, is limited first by the two criminal statutes and by the subheading listing specific individuals and types of entities.

h) Checks, cashiers (sic) checks, money orders and/or wire transfers.

i) Safes and keys to safe deposit boxes, documents related to safe deposit boxes.

j) Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

2. For any computer, computer hard drive, or other physical object upon which electronic data can be recorded (hereinafter, "COMPUTER") that is called for under paragraph 1 of this attachment:

a) Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs and correspondence;

b) Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c) Evidence of the lack of such malicious software;

d) Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e) Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f) Evidence of the times the COMPUTER was used;

g) Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h) Documentation and manuals that may be necessary to access the COMPUTER or conduct an examination of the COMPUTER;

i) Contextual information necessary to understand the evidence described in this attachment;

j) Computer software which may have been used to create, access, modify or to otherwise interact with the stored files. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. It commonly includes the operating systems, applications (like word-processing, graphics, or spreadsheet programs, utilities, compilers, interpreters, and communications programs;

k) Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

(Compl. Ex. A, Attachment B.)

In part II, the warrant defined "Records," "Documents," and "Information" as including

> all of the foregoing items of evidence in whatever form and by whatever means
> they may have been created or stored, including any form of computer or
> electronic storage (such as hard disks or other media that can store data); any
> handmade form (such as writing, drawing, painting); any mechanical form (such
> as printing or typing); and any photographic form (such as microfilm, microfiche,
> prints, slides, negatives, videotapes, motion pictures, photocopies).

(*Id.*)

On the morning of March 14, 2017, agents from the IRS arrived at Plaintiff's residence and executed the warrant. (Mot. UMF 5.) Numerous items, including computers, an IPad, several flash-drive data storage devices, documents, and tax publications were seized. (*Id.*) An Inventory Listing of All Items Seized at Search Warrant Site (Inventory) signed by Defendant Daza, was filed in Case No. 17 MR 186 (Doc. No. 3). The Inventory listed items seized at Plaintiff's residence: legal documents, Prime Marsa LLC documents, data extrusion from a cell phone, IPad, Dell computers, Sandisks, thumb drives, laptop, 2 electronic tablets, hard drives, research on tax law, promotional materials, booklets, form letters to the IRS, documents related to National Business Services, LLC, W2 High Plains, Bioenergy LLC, bank deposit slips and checks, LLC incorporation documents for Arrowhead Properties, Point Blank Teaching, New Age System LLC, Northern Lights Leasind (sic), Mortgage Freedom Group, Big Dipper Properties, client letters, website set up notes, abusive tax promotions disc, client court files, Pueblo Bonito records, note pad with possible client names, ABC Holding Trust Documents, Correspondence with clients (Ozark Pure Trust, Solutus, LLC, LG Kendrick, LLC), Power of Attorney signed by Monica Wellington, correspondence to Fannie Mae questioning authority, court documents between Wellington and mortgage company, Safe, information for operating agreements, ledger, diary, emails, and printouts of purchases. (*Id.*)

## 2. Disputed Material Facts

The government disputes Plaintiff's assertions about Defendant Daza's application for the search warrant, the motion to seal the warrant application and affidavit, and whether the warrant had the affidavit attached to it when it was executed. Although the government concedes that Defendant Daza applied for the warrant and submitted an affidavit to Magistrate Judge Lynch, the government disputes Plaintiff's allegation that Defendant Daza filed the motion to seal the affidavit. Defendants dispute Plaintiff's allegation that Defendant Daza "reviewed the warrant, without the affidavit, and despite his knowledge the warrant would be facially deficient without the affidavit, decided it should be executed anyway, and arranged with others for its execution." (Mot. at 3 (citing Compl.).) The Court takes judicial notice of the docket in the Warrant Case that shows the warrant was executed and the Inventory filed before the motion to seal the affidavit was filed. Based on this record, there is a material factual dispute over whether the warrant and the affidavit were combined into one document when the warrant was executed because Plaintiff presented no admissible evidence establishing his allegation that the warrant was executed without the affidavit.[7]

---

[7] Defendant Daza's affidavit is attached to the Response and states,

> I wrote the warrant application, warrant, attachments to the warrant and the affidavit in support of the warrant. The affidavit in support of the warrant was based on my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers. Before presenting the search warrant application to the Honorable William P. Lynch, the affidavit was reviewed by the Assistant United States Attorney (AUSA) on the case, by an IRS Criminal Tax Attorney, and by IRA-CI management. The affidavit was provided to the United States Magistrate Judge for review. I relied in good faith on the review of the attorneys and the judge. I believe the warrant to be valid as authorized by Judge Lynch.

(Resp. (Doc. No. 43-2).)

Plaintiff argues that "Defendant Daza's failure to state in his declaration whether or not the affidavit was available" should be subject to a negative inference. In other words, Plaintiff asks the Court to find as an undisputed fact that Defendant Daza's affidavit did not accompany the warrant at the time of execution. However, the Court disagrees. Because Defendant Daza did not accompany the agents who searched Plaintiff's residence, he would not have the personal knowledge necessary to so testify. Thus, the Court will not grant Plaintiff the favorable inference he seeks.

III.    DISCUSSION

   A.    Fourth Amendment

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause … and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A search warrant must meet two requirements: first, it must be supported by probable cause, and second, it must describe with particularity "the place to be searched, and the persons or things to be seized." *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Courts addressing whether a warrant is supported by probable cause must consider the supporting affidavit regardless of its incorporation into the warrant. *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) ("In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed.") (quotations omitted).

To survive a challenge to its particularity "[a] warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of Strunk & White to satisfy the particularity requirement. But it should enable the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011). However, the particularity requirement "must be applied with a practical margin of flexibility, depending on the type of property to be seized, and … a description of property will

be acceptable if it is as specific as the circumstances and nature of the activity under investigation permit." *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982) (collecting cases that interpret particularity in the context of fraud investigations). Reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the "paper puzzle." *Id.* at 1349 & n. 4.

To decide whether a warrant is sufficiently particular, "[t]he fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow[.]" *United States v. Leary,* 846 F.2d 592, 600 (10th Cir. 1988) (internal quotation marks omitted). And, "the particularity of an affidavit may cure an overbroad warrant." *Id.* at 603. An affidavit may cure an overbroad warrant, "but only where the affidavit and the search warrant…can be reasonably said to constitute one document[.]" *Id.* (emphasis added). To constitute one document, the affidavit and the search warrant must be physically connected, and the warrant must expressly incorporate the affidavit by reference. *Id.*

### 1.     Plaintiff's Probable Cause Challenge

Although the Plaintiff primarily attacks the particularity of this warrant, he also argues that the warrant exceeds the probable cause that may have been established through the application and affidavit. The government argues that the Court cannot make that determination because the sealed affidavit is not available in this record. Therefore, to the extent Plaintiff asks for summary judgment on this basis, the Court will deny the Motion without prejudice.

### 2.     Particularity of the Warrant May Be Cured by the Affidavit

Plaintiff argues that the warrant does not meet the particularity required by the Fourth Amendment, and even if the affidavit was unsealed, the Court cannot consider it to cure any defect in the warrant. Plaintiff avers that "no affidavit accompanied the warrant at the time of

execution," but that statement assumes facts that are not supported with admissible evidence. (Mot. at 6.) At the time of the search, Plaintiff received a copy of the warrant, Attachments A and B, and an inventory of items seized. Plaintiff asserts that because the copy of the warrant given to him at the search did not have the affidavit attached to it, the Court cannot consider the affidavit in a particularity analysis. But, the Tenth Circuit recently rejected a similar argument: "the plain language of the Fourth Amendment requires us to focus solely on the warrant as issued to police rather than any copy given to the person or persons targeted by the search." *United States v. Pulliam*, 748 F.3d 967, 972–73 (10th Cir. 2014) (rejecting argument that warrant lacked particularity because copy of warrant given to defendant omitted the attachment). Therefore, even though Plaintiff did not receive both the warrant and an attached affidavit at the time of the search, the Court may be able to consider the affidavit if the Court later finds that the warrant in the custody of the agents who did the search had the affidavit attached to it. *Id.*

### 3. Plaintiff's Facial Particularity Challenge

Defendant Daza argues that the Court should deny the Motion regardless of whether the affidavit was attached because the structure and the language of Attachments A and B show that this warrant is itself sufficiently particular. Similarly, Plaintiff asks the Court to rule on the particularity of this warrant without the affidavit, and he compares this warrant to cases in which warrants that had no attached affidavits were found insufficiently particular. For example, Plaintiff cites *Leary,* in which the Tenth Circuit analyzed a warrant that had only two limitations: (1) a list containing all types of business records; and (2) a proviso stating the documents had to relate to "the purchase, sale and illegal exportation of materials in violation of federal export laws." 846 F.2d at 601. The Tenth Circuit held that neither the general reference to federal export laws nor the generic list of business documents sufficiently limited the scope of the search

warrant. *Id.* at 601–603. The government argued that the warrant affidavit cured the defects in the warrant because it recited in detail "the [defendant's] purchase and attempted export of a Micro-tel Precision Attenuation Measurement Receiver … to the People's Republic of China" without a proper license via a "series of 'front' companies in Hong Kong." *Id.* at 594. The Court rejected that argument because there was no evidence that the affidavit was "physically connected" to the warrant, and the warrant did not "expressly refer to the affidavit and incorporate it by reference using suitable words of reference." *Id.* at 603. Therefore, the Tenth Circuit concluded that the warrant was deficient without the curative effect of the affidavit.

The Tenth Circuit likened the warrant in *Leary* to the warrant found insufficient in *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985). *Id.* at 601. The warrant in *Voss* authorized agents to seize documents and records "[a]ll of which are evidence of violations of Title 18, United States Code, Section 371." 774 F.2d at 405. In *Voss*, the Tenth Circuit concluded that the conspiracy statute did not constitute "a constitutionally adequate particularization of the items to be seized." *Id.*

Plaintiff argues that this warrant, like each warrant in *Leary* and *Voss*, merely refers to very broad statutes, followed by a "laundry list of generic common financial documents." (Mot. at 7.) However, this warrant is worded much differently. This warrant limited the seizure to all books and records pertaining to "National Business Services, New Mexico Limited Liability Companies (NMLLCs), Stacy Underwood, David Wellington, Jerry Schrock, Michelle Schrock or associated companies/parties." This qualification sentence along with the reference to the tax evasion and conspiracy statutes provide the particularity absent in *Leary* and *Voss*.

Plaintiff also likens this warrant to cases discussed in *Leary*: *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) and *Rickert v. Sweeney*, 813 F.2d 907, 908–09 (8th Cir. 1987). In

*Cardwell*, the Ninth Circuit found a warrant impermissibly broad because it allowed a search and seizure of appellants' business papers that were the instrumentality or evidence of violations of the general tax evasion statute. 680 F.2d at 77. The Ninth Circuit disapproved of the warrant's broad description of records: checks, journals, ledgers, etc. and its lack of any date or subject matter limitation. *Id.* at 78–79. In *Rickert*, the Eighth Circuit found that the warrant lacked sufficient particularity because it broadly described all business records that "are instrumental means and evidence of the commission of offenses in violation of" the general conspiracy and general tax evasion statutes. 813 F.2d at 908. The IRS agents who executed the warrant confiscated every business record located on the premises. *Id.*

Here, the warrant's language and structure sets it apart from the cases cited by Plaintiff. Under this warrant, agents could seize an item only if it was (1) evidence, fruit, or an instrumentality of a violation of 26 U.S.C. § 7201 and 18 U.S.C. § 371, for the time period of January 1, 2005 through the present;[8] **and** (2) associated with National Business Systems, certain individuals, New Mexico LLCs, or related entities; **and** (3) located in the Plaintiff's residence. *United States v. Brooks*, 427 F.3d 1246, 1252 (10th Cir. 2005) (finding that a warrant's limiting language should be applied through natural reading of sentence within context of the warrant).

_____

[8] Plaintiff argues that this date limitation is unconstitutionally broad since the statute of limitations for tax evasion is six years and for conspiracy three years. However, Plaintiff has not cited, nor has the Court found, case law holding that search warrants must be limited to the statutory limitations period. Plaintiff has cited *Matter of Search of Kitty's East*, 905 F.2d 1367, 1375 (10th Cir. 1990) (finding that date restriction in a warrant was not unreasonable because it was tied to the statute of limitations). In that case, the Tenth Circuit ruled that the trial court erred in ruling that a warrant was overbroad because the warrant was tied to the statute of limitations for some of the crimes under investigation.

Moreover, Plaintiff argues without case law citation that the warrant impermissibly allowed a search of all New Mexico limited liability companies and other "associated companies/parties." In a later paragraph the warrant qualifies its reach to "[d]ocuments constituting, listing or describing domestic trusts, limited liability companies (LLCs) or other foreign entities created on behalf of any of the above mentioned individuals or businesses." (Warrant at 2 ¶ I.1.c.) An agent questioning what documents should be seized for certain entities need only to read the later paragraph's limitation to avoid a general sweep of irrelevant documents. And, under the preamble paragraph of the warrant, any such documents must be related to the crimes of tax evasion and conspiracy. Plaintiff's argument fails to persuade that this warrant lacks particularity.

The Court finds that this warrant satisfies the particularity requirement of the Fourth Amendment because it seeks materials related to certain crimes, over a certain time period, that relate to certain individuals and entities. Thus, this warrant proves sufficient restriction, considering the crimes under investigation. *United States v. Welch*, 291 F.App'x 193, 203 (10th Cir. 2008) (finding that a search and seizure of "computers" was sufficiently contained within the context of the search warrant which directed agents to search for evidence of drug manufacturing). In *Leary*, the court concluded that the warrant made merely an "unadorned reference to a broad federal statute," and authorized the seizure of "virtually every document that one might expect to find in a ... company's office" which included documents with no connection to the criminal activity at issue. 846 F.2d at 602. In contrast, this warrant and its lengthy description provide sufficient guidance to the agents executing it, and the Court cannot find that as a matter of law Plaintiff's Fourth Amendment rights were violated. Therefore, the Court will deny the Motion as to Plaintiff's First Cause of Action.

4.      Search for Electronic Records

"The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important." *United States v. Riccardi,* 405 F.3d 852, 863 (10th Cir. 2005) (finding that warrant authorizing general search of computer was invalid because it permitted officers to search anything "from child pornography to tax returns to private correspondence"). With respect to computer searches, the Tenth Circuit has held that the particularity requirement of the Fourth Amendment demands that "[o]fficers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching

files of types not identified in the warrant." *United States v. Walser,* 275 F.3d 981, 986 (10th Cir. 2001). At the same time, the Tenth Circuit has recognized that a computer search "may be as extensive as reasonably required to locate the items described in the warrant." *United States v. Grimmett,* 439 F.3d 1263, 1270 (10th Cir. 2006) (quoting *United States v. Wuagneux,* 683 F.2d at 1352). Moreover, the Tenth Circuit has adopted a "somewhat forgiving stance" in analyzing particularity challenges to search warrants involving computers. *Grimmett,* 439 F.3d at 1269. *See infra, United States v. Potts*, 586 F.3d 823, 833 (10th Cir. 2009).

In the Second Cause of Action, Plaintiff contends that the warrant gave a general authorization to seize any computer or related equipment without any restrictions or limitations. (Mot. at 13.) Again, the structure of Attachment B limits the seizure to computer equipment and electronic data that are evidence of tax evasion and conspiracy. According to Plaintiff, the Tenth Circuit requires more specificity. Plaintiff points to *United States v. Otero*, where the court found that although the warrant limited physical items to specific crimes against specific victims, the paragraphs of the warrant related to the seizure of computer data did not refer to those particular limitations. 563 F.3d 1127, 1132–33 (10th Cir. 2009). The court stated that "the presence of limitations in each of the first five paragraphs but absence in the second four suggests that the computer searches are *not* subject to those limitations." *Id.* at 1133. The court concluded that even when read in the context of the overall warrant, "the paragraphs authorizing the computer search were subject to no affirmative limitations." *Id.* This warrant does not suffer from the same infirmity because the overall statutory limitations limit the seizure of computer equipment and data.

In *Mink v. Knox*, another case cited by Plaintiff, the court found that the warrant allowed agents to seize all computer equipment in the subject's house without any mention of any

particular crime to which they might be related, essentially authorizing a "general exploratory rummaging" through the subject's belongings for any unspecified "criminal offense." 613 F.3d 995, 1011 (10th Cir. 2010). Unlike the warrants in *Otero* and *Mink*, this warrant limits the search to electronic data related to the crime of tax evasion and conspiracy.

Plaintiff further argues that due to the inherent comingling of so much information in one place, many courts have required warrants to spell out protocols for searchers to follow when examining those items. *See, e.g., United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010). In that case, the Ninth Circuit approved of a requirement that warrants specifically state methods for searchers of data from computers: a "warrant application should normally include, or the issuing judicial officer should insert, a protocol for preventing agents involved in the investigation from examining or retaining any data other than that for which probable cause is shown." *Id.* at 1167.

Plaintiff points to a Tenth Circuit case that recognized the use of such protocols. In *United States v. Potts*, the court approved of computer search protocols in an Addendum to the warrant which set out

> a procedure for searching the computer and related equipment by listing "techniques" that may be used. In its first subparagraph, the addendum refers to "surveying" file directories and individual files in language that appears to limit the "survey" to the names or labels attached to directories and files.

586 F.3d at 834. Despite the recognition of the protocols in *Potts*, the Tenth Circuit does not follow other courts that have required warrants to have limiting protocols for computer searches. *See generally, United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013) ("[I]t is unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods—that process must remain dynamic.") (quoting *United States v. Burgess*, 576 F.3d 1078, 1093

(10th Cir. 2009)). Under the standards set out by the Tenth Circuit, this warrant's lack of specific search protocols for computer data does not violate the Fourth Amendment.

Plaintiff next argues that the warrant impermissibly allowed the seizure of computer "peripheral equipment" such as modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners, "that could not possibly contain any information." (Mot. at 14.) This argument has no support in the record, and no evidence is presented showing that these devices could not possibly contain information related to tax evasion and conspiracy. Thus, the Court will not grant Plaintiff summary judgment on his Second Cause of Action.

B.       First Amendment

The First Amendment protects a person's right of association, and privacy in one's associations is an important aspect of that right. *Roberts v. United States Jaycees*, 468 U.S. 609, 622–23 (1984). *See NAACP v. Alabama*, 357 U.S. 449, 458–59 (1958) (allowing association to protect its members' names from exposure to state authorities). The First Amendment also protects individuals from seizure of written materials that espouse politically unpopular beliefs. *Voss*, 774 F.3d at 405. In *Voss*, the Tenth Circuit Court found that an "all records" warrant, which placed no limitation on the documents to be seized, and which resulted in the seizure of items including copies of *The Federalist Papers,* violated both the First and Fourth Amendments. The court determined that if materials sought to be seized are protected by the First Amendment, "the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'" *Id.* (citing *Zurcher v. Stanford Daily,* 436 U.S. 547, 564 (1978) and *Stanford v. Texas,* 379 U.S. 476, 485 (1965)).

Plaintiff argues that the warrant impermissibly allowed agents to seize records, such as address books, phone books, rolodex indices and contact lists, and to discover information about other "companies/parties" merely because they "associated" with the listed individuals and entities (Mot. at 8–9.) According to Plaintiff, this broad language violated his right to privacy in his personal associations and had "a 'chilling effect' on the freedom to associate." (Mot. at 9.) Plaintiff further maintains that when a search warrant implicates associational rights, it is facially overbroad if not narrowed with "scrupulous exactitude." (*Id.*) (citing *NAACP v. Alabama*, 357 U.S. 449, 460–61 (1958); *NAACP v. Button*, 371 U.S. 415, 428–29 (1963); *Voss*, 774 F.2d at 405; and *National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521 (10th Cir. 1994)).

Plaintiff fails to recognize the warrant's limitation that all seized items must be evidence of tax evasion and conspiracy. Thus, the warrant does not impermissibly violate First Amendment freedom to associate because the First Amendment does not prevent a search for items that "tend to prove conspirators' associations with each other or other concrete legal violations." *Voss* 774 F.2d at 408 (Logan, J., concurring).

Plaintiff argues this warrant suffers from another defect found in the *Voss* warrants, which authorized the seizure of all books, records or documents relating to the services and membership lists of the National Commodities and Barter Association (NCBA). *Id.* at 403, 406. In *Voss*, the warrant affidavit described an undercover investigation of the NCBA by IRS agents who believed the organization conducted "financial transactions on behalf of its clients in a manner designed to avoid detection by the IRS." *Id.* at 403. The Tenth Circuit ruled that the warrant was supported by probable cause because it alleged a scheme of tax fraud; however, the warrant did not meet the particularity requirement because it allowed seizure of NCBA membership lists and records unrelated to tax fraud. "[T]he bulk of the warrant … authorized

government agents to rummage through all of the NCBA's customer files, bank records, employee records, precious metal records, marketing and promotional literature, and more seeking information pertaining to any federal crime." *Id.* at 405. The court also found that the warrants' violation of the particularity requirement was "made even more egregious by the fact that the search at issue implicated free speech and associational rights.…The search warrant authorized the seizure of indicia of membership in or association with the NCBA as well as books expressing a particular political ideology." *Id.* The court concluded that the bulk of the warrant allowed the seizure of evidence "whether or not related to tax fraud[.]" *Id.* at 406.

The undisputed facts in this case set it apart from *Voss*. All items seized under this warrant had to be related to tax evasion and conspiracy. This warrant did not allow "the indiscriminate search and seizure of information relating to anyone's association with anyone else—for any reason[.]" (Mot. at 10.) The warrant also did not allow the seizure of address books etc. to find out the identity of "absolutely anyone." (*Id.*) Nor did the warrant seek to find out the identities of all persons who had associated with Plaintiff for any reason. Instead, the warrant limited its reach to certain persons and types of entities related to those persons who agents had probable cause to believe were engaged in tax evasion and conspiracy. Moreover, Plaintiff did not present evidence that National Business Services is an association that, like the NCBA, espoused political ideals and whose members and records of activities are protected by the First Amendment.

Plaintiff further argues that this search warrant impermissibly allowed the government to seize items, such as books, on the basis of their content. "[T]he constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things are books and the basis for their seizure is the ideas they

contain.'" *Voss*, 774 F.2d at 405 (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

However, this warrant allowed seizure of books and printed material related to tax evasion and

conspiracy, and those are instrumentalities of crime that the government is allowed to seize

under a valid warrant. *Id.* at 408 (Logan, J., concurring). Plaintiff argues that the reference to

"tax defier paraphernalia" "to include instruction manuals, and how to pamphlets" allows the

confiscation of items beyond instrumentalities of crime. Again, the structure of the warrant limits

the meaning of tax defier paraphernalia (*see supra* note 6) to items evincing crimes. The items

listed in the warrant were not identified by their expressive political or ideological content, but

by their propensity to aid those who sought to evade taxes. As such, they are not protected by the

First Amendment. *Pleasant v. Lovell*, 876 F.2d 787, 790 (10th Cir. 1989) (stating that speech

advocating or instructing members how to evade taxes was not protected speech). *See United*

*States v. Goff*, 677 F.Supp.1526, 1540 (D. Utah 1987) (finding that a warrant's reference to

financial records and commercial documents was qualified by reference to statute and did not

allow the seizure of "First Amendment material"). *See also Frisby v. United States*, 79 F.3d 29,

31–32 (6th Cir. 1996) (finding that the First Amendment did not protect pamphlets and

publications expressing defendant's "anti-tax" political beliefs and stating, "the fact that some of

the seized property is expressive written material does not insulate it from government seizure

where there is, as here, probable cause to believe that it was used to facilitate criminal activity");

*United States v. Stelten*, 867 F.2d 446, 450 (8th Cir. 1989).[9] The Court finds that "tax defier

paraphernalia" in the context of this warrant did not allow the seizure of items that were

---

[9] The court in *Stelten* held that the seizure of documents related to a member of the NCBA contained proof of the way in which the member used the NCBA's financial services to conceal income. The court concluded that this type of business record in no way resembles "indicia of membership," because its evidentiary value was independent of the association it demonstrated. *United States v. Stelten*, 867 F.2d at 451.

protected speech. Thus, the Court will deny the Motion as to Plaintiff's Fifth and Sixth Causes of Action.

C.     Qualified Immunity

Plaintiff argues that since the undisputed evidence establishes that Defendant Daza violated clearly established constitutional rights, he should not be protected by qualified immunity from Plaintiff's claims. Plaintiff's argument fails because the Court has found that the warrant meets the particularity requirement of the Fourth Amendment and does not infringe upon Plaintiff's First Amendment rights. As for the assertion that the warrant is overbroad, i.e. that it exceeds the scope of probable cause, the Court cannot rule without examining the warrant affidavit. Moreover, two of the Defendants, Marshall and Hand have not yet been served although the United States has agreed to accept service on their behalf. (Resp. at 23.) In short, Plaintiff's argument that Defendant Daza is not entitled qualified immunity either fails or is premature.

D.     Stay

In the Response, Defendant Daza asks the Court to re-impose the stay of proceedings in this case pending resolution of the criminal investigation; however, if the Court orders this case to proceed, Defendant Daza asks that he be allowed 30 days from the date of this ruling to file an answer, a responsive pleading, or a motion. (Resp. at 24.) Plaintiff counters that Defendant Daza should be required to respond to the Complaint and the case should be allowed to proceed, especially since unknown Defendants still remain unidentified and Defendants Marshall and Hand should be served. (Reply at 2.) It is appropriate for the government to answer the Complaint, or to file a responsive pleading or motion, within 30 days of the date of entry of this MEMORANDUM OPINION AND ORDER. Thus, a stay will not be imposed at this time.

IT IS ORDERED that PLAINTIFF'S MOTION FOR PARTIAL SUMMARY

JUDGMENT (Doc. No. 40) is denied and Defendant Daza must file a responsive pleading or

motion by July 5, 2018.

_____

SENIOR UNITED STATES DISTRICT JUDGE