**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

DAVID WELLINGTON,

     **Plaintiff,**

vs.                                **No. 17 CV 00732 JAP/LF**

FERNANDO DAZA,
SPECIAL AGENT MARSHALL,
SPECIAL AGENT HAND,
JOHN/JANE DOES 1-5,

     **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

In this *Bivens*[1] action, Plaintiff David Wellington, acting *pro se*, alleges that a search of

his residence under a search warrant, procured and executed by agents of the United States

Internal Revenue Service (IRS), violated his First and Fourth Amendment rights. *See*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES (Doc.

No. 1) (Complaint). IRS Special Agents Fernando Daza (SA Daza), Sean Marshall (SA

Marshall), and Gregory Hand (SA Hand) (together, Defendants) move for summary judgment on

six of Plaintiff's seven claims. *See* DEFENDANT DAZA, HAND, AND MARSHALL'S

MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

(Doc. No. 53) (the Motion). The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE TO

DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION ON QUALIFIED

IMMUNITY (Doc. No. 60) (Response), and REPLY OF THE DEFENDANTS IN SUPPORT

---

[1] *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing that damages are available under 42 U.S.C. § 1983 for claims against federal law enforcement officials).

OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 62)

(Reply). The Court will grant the Motion because Defendants are entitled to qualified immunity

on the First Claim, the Second Claim, the Fourth Claim, the Fifth Claim, the Sixth Claim, and the

Seventh Claim.[2]

I.      STANDARD OF REVIEW

Summary judgment is appropriate if the factual record demonstrates that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). When applying this standard, the court examines the factual record in

the light most favorable to the non-movant. *Belhomme v. Widnall,* 127 F.3d 1214, 1216 (10th

Cir.1997). "[T]he movant need not negate the non-movant's claim, but need only point to an

absence of evidence to support the non-movant's claim." *Sigmon v. CommunityCare HMO, Inc.,*

234 F.3d 1121, 1125 (10th Cir.2000). If the moving party meets this initial burden, the

nonmoving party may not rest on his pleadings but must bring forward evidence showing a

genuine issue for trial as to those dispositive matters for which the nonmoving party carries the

burden. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

"The doctrine of qualified immunity protects public or government officials 'from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*,

555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a

defendant asserts qualified immunity, the plaintiff must satisfy a "strict two-part test." *McBeth v.*

---

[2] In the Complaint, the claims are entitled Causes of Action. The Court has denied Plaintiff's Motion for
Partial Summary Judgment. *See* MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PARTIAL
SUMMARY JUDGMENT (Doc. No. 46) (MOO Denying Summary Judgment). The Court has also denied
Plaintiff's Motion for a Preliminary Injunction. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 68).
Plaintiff has appealed the denial of preliminary injunction. *See* Notice of Appeal (Doc. No. 73). In the THIRD
CAUSE OF ACTION (Compl. ¶¶ 55–56) (Third Claim), Plaintiff contends that the agents who executed the warrant
unreasonably patted him down for weapons in violation of plaintiff's right to be free of unreasonable searches. The
Third Claim is not at issue here.

*Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish that 1) the defendant violated a constitutional or statutory right and 2) the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.,* 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). But, if the plaintiff succeeds in carrying his two-part burden, the burden shifts to the defendant who must show there are no remaining material issues of fact that would defeat the claim of qualified immunity. *Walton v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

While the Court must construe pleadings filed by a *pro se* litigant liberally, "the courts do not serve as the *pro se* litigant's advocate, and *pro se* litigants are expected to follow the Federal Rules of Civil Procedure, as all litigants must." *McDaniels v. McKinna*, 96 F. App'x 575, 578 (10th Cir. 2004). In ruling on a motion for summary judgment based on qualified immunity, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50. Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party, and it must construe all evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Importantly however, "a plaintiff's version of the facts must find support in the record" at the summary judgment stage. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. At bottom, the non-movant must present evidence "from which a jury might return a verdict in his favor." *Id.* at 257. *See Gonzales v. Bernalillo Cty. Sheriff's Dep't*, CV 16-1045

MCA/GBW, 2017 WL 3208529, at *4 (D. N.M. Apr. 4, 2017) (discussing summary judgment in qualified immunity context), *report and recommendation adopted*, CV 16-1045 MCA/GBW, 2017 WL 3207798 (D. N.M. May 31, 2017).

## II.     FACTUAL BACKGROUND

### A.     Warrant Application and Execution

On March 10, 2017, SA Daza of the Internal Revenue Service (IRS) Criminal Investigation Unit applied for a warrant to search Plaintiff's residence located at 2124 Altura Verde Ln. NE, Albuquerque, New Mexico. (UMF 1; Mot. Ex. A (Daza Aff.); Mot. Ex. B (Warrant).) United States Magistrate Judge William P. Lynch reviewed (1) the Warrant application, (2) SA Daza's supporting affidavit (Warrant Affidavit); (3) the Warrant itself; and (4) two attachments to the Warrant describing the residence and the items sought. Case No. 17-mr-0186 (Warrant Case) (UMF 2; Mot. Ex. B attachments A and B.) Magistrate Judge William P. Lynch approved and signed the Warrant on March 10, 2017.  *See* Warrant Affidavit, 17-mr-00186 JHR (Doc. No. 1) (unsealed).

On March 14, 2017, SA Marshall, SA Hand, and other federal agents executed the Warrant. Plaintiff alleges that the agents told him he "could either go inside and sit, or leave[]" during the search. (*See* Compl. ¶ 30.) However, Plaintiff adds that since he was only wearing a t-shirt and pajama bottoms and was not allowed to change clothes, he had no real choice but to stay. (*Id.*) One agent patted down Plaintiff for weapons. (*Id.* ¶ 27.) During the search, agents seized numerous documents, publications, and electronic storage devices. (UMF 12; Mot. Ex. B.) The Court has described in detail all of the items seized at Plaintiff's residence in its MOO Denying Summary Judgment (Doc. No. 46) at p. 10.  On March 16, 2017, SA Daza filed a return and an inventory of items seized at the residence. (Mot. Ex. B (inventory).) As of February 20,

2018, all seized items had been returned to Plaintiff either in original form or in the form of electronic copies. (UMF 13; Mot. Ex. C (Chavez Aff.)).[3]

B.    Warrant Affidavit

SA Daza prepared the Warrant Affidavit based on "his personal knowledge, his review of documents and other evidence, and his conversations with other law enforcement officers." (Mot. at 4 citing Mot. Ex. B.) An attorney assigned to IRS Criminal Tax matters reviewed the Warrant Affidavit prior to its submission to Magistrate Judge Lynch. (UMF 8; Mot. Ex. B.) The Warrant Affidavit describes an investigation of "whether Stacy Underwood (UNDERWOOD) and other individuals set up and operated a tax evasion scheme which relies on the use of New Mexico Domestic Limited Liability Companies (LLCs) and bank accounts[.]" (Warr. Aff. ¶ 5.) Several facts were listed as supporting probable cause:

1. Records from the IRS indicate that Plaintiff had not filed "U.S. Individual Income tax returns for over 20 years and may have never filed." (*Id.* ¶ 14.) Underwood had not filed Individual Income tax returns with the IRS since tax year 2004. (*Id.* ¶ 9.)

2. In 2005, Plaintiff organized National Business Services, LLC (NBS), a New Mexico LLC, and listed Underwood as the registered agent for NBS. (*Id.* ¶ 16.) Plaintiff and Underwood used NBS: to set up LLCs; to obtain Employer Identification Numbers (EINs)[4] from the IRS for

_____

[3] On April 18, 2017, Plaintiff filed a Motion for Return of Property Seized Under Warrant (Warrant Case Doc. No. 6). *See* Fed. R. Crim. P. 41(g). On October 10, 2017, Magistrate Judge Jerry H. Ritter denied the motion without prejudice for lack of jurisdiction to allow Plaintiff to file a civil action for return of his property or to amend the Complaint in this case. (Warrant Case Doc. No. 14.) Plaintiff appealed Magistrate Judge Ritter's ruling to the Tenth Circuit Court of Appeals, but the appeal was dismissed for lack of jurisdiction. *In the Matter of the Search of 2124 Altura Verde Ln. NE, Albuquerque, NM 87110, Wellington v. United States*, Case No. 17-2205 (10th Cir. Jan. 8, 2018). Plaintiff filed a motion to consolidate the Warrant Case with this case. Defendants responded that on February 20, 2018, all of Plaintiff's property had been returned; therefore, the motion had become moot. Finding that the Warrant Case and this case are "dissimilar in purpose and procedure" and that the issue had become moot, the Court denied the motion to consolidate. MEMORANDUM OPINION AND ORDER (Doc. No. 38).

[4] EINs are issued to business entities that are required to file business tax returns. (*Id.*) The EIN is used to identify the tax accounts of employers and certain other entities that have no employees. (*Id.*)

the LLCs; to open bank accounts for the LLCs using only EINs; and to instruct clients how to deposit and withdraw money from the account to avoid IRS detection. (*Id.* ¶¶ 3, 5, 6, 16–25.)

3. "The State of New Mexico does not require the organizer of an LLC to identify the owner of the LLC." (*Id.* ¶ 22.) A website associated with NBS advertised "the services provided by NBS[.]" (*Id.* ¶ 18.) The NBS website describes how to take advantage of New Mexico law to open a financial account for an LLC using only the LLCs identifying information to avoid linking the LLC to its individual owner. (*Id.* ¶ 21.) Between 2005 and 2016, Plaintiff and Underwood used NBS to organize "hundreds of New Mexico LLCs with the New Mexico Secretary of State." (*Id.*) NBS requested EINs for over 50 LLCs from the Internal Revenue Service (IRS). (*Id.* ¶ 23.)

4. NBS's website advertises a "Free Asset Protection Training Course," on how to "keep your business, income, and property affairs private[.]" (*Id.* ¶ 19.) Between 2005 and 2016, "Underwood opened at least 50 bank accounts at Bank of America for New Mexico LLCs that she organized. Underwood had signature authority on the accounts and sole signature authority on most of the accounts." (*Id.* ¶ 24.) The bank account documents did not identify the owner of the LLC and also did not "contain the SSN for Underwood as the individual in control of the account." As a result, the bank reported to the IRS financial information only for the LLC. (*Id.*)

5. In January 2011, Underwood set up White Top Enterprises, LLC (White Top), a New Mexico LLC owned by Jerry R. Shrock (Shrock). Shrock has not filed individual income tax returns with the IRS for the years 1998-2001; 2003-04; and 2011-2014.[5] (*Id.* ¶¶ 15, 26, & 31.) Underwood opened a bank account for White Top using only the EIN for White Top and

---

[5] As of January 20, 2016, Shrock had an assessed balance due to the IRS in the amount of $1,485,634.00. (*Id.* ¶ 26.) The IRS filed a tax lien on Shrock in 2007 for $1,026,857.00. (*Id.* ¶ 30.) NBS assisted Shrock in forming TALC, LLC, a New Mexico LLC. In 2006, Shrock and his wife transferred real property to TALC, LLC apparently to avoid the attachment of the IRS tax lien to the property. (*Id.* ¶¶ 26–30.) As of April 2016, TALC, LLC still owned the property. (*Id.* ¶ 27.)

authorizing herself as the only signatory on the account. (*Id.* ¶ 32.) Between August 2011 and June 2014, the White Top bank account received deposits of over four million dollars from Moark, LLC, a company in the egg production industry. (*Id.* ¶ 33.) IRS Special Agents learned from an interview with Moark executives that the payments were for installation of specialized equipment and that Moark considered Shrock the owner of White Top. (*Id.*) Shrock provided Moark a required IRS Form W-9[6] so that Moark could report to the IRS payments made to White Top. However, the Form W-9 contained only White Top's EIN, and Shrock did not sign his name on the form but instead wrote "White Top Enterprises, LLC" on the signature line. (*Id.* ¶ 34.) Based on the information on White Top's W-9 Form, the IRS would link Moark's payments only to White Top's EIN and not to Shrock individually. (*Id.*)

6. Under IRS Publication 3402 (Rev. March 2010), a single member LLC is a disregarded entity for federal income tax purposes and is required to use the owner's SSN or the owner's EIN for reporting purposes. (*Id.* ¶ 35.)

7. The funds deposited into the White Top bank account were obtained through the use of debit card transactions, money orders, cash withdrawals from ATMs, and checks signed by Underwood. The funds were used to buy property, to pay credit card balances, and to pay expenses for Shrock and his wife. (*Id.* ¶¶ 37–42.)

8. Plaintiff was believed to have been residing at 2124 Altura Verde Ln. NE because (1) utility service was in Plaintiff's name (*Id.* ¶ 51); (2) Plaintiff had been served a subpoena at that address (*Id.* ¶ 52); and (3) Internet service for that address was in Plaintiff's name (*Id.* ¶ 55).

9. There were numerous messages between email accounts associated with Underwood and Plaintiff. (*Id.* ¶ 56.) Based on the information from the emails, SA Daza stated that in his

---

[6] "The purpose of the Form W-9 is to provide a person who is required to file an information return with the IRS with the correct taxpayer identification number (TIN) to report, for example, income paid, real estate transactions, mortgage interest paid, acquisition or debt, or contributions made to an IRA." (*Id.* ¶ 34.)

experience, business owners like Plaintiff and Underwood who use email also have other business records stored on computers and electronic devices. (*Id.* ¶¶ 57–58.) Based on information from internet providers, SA Daza opined that computers containing those types of records would be located at 2124 Altura Ln. NE. (*Id.* ¶ 59.)

> 10. Finally, SA Daza stated
>
> I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of the disruption. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return that equipment.

(*Id.* ¶ 66.)

## III.    DISCUSSION

The Court recognizes that Plaintiff's claims have not arisen in a criminal proceeding by way of a motion to suppress evidence unlawfully seized. Instead, Plaintiff chose to sue under 42 U.S.C. § 1983 and *Bivens* for civil damages and injunctive relief alleging violations of his constitutional rights. Although a criminal investigation is ongoing, Plaintiff has not been charged with a crime. In evaluating Plaintiff's civil claims, the Court recognizes that Plaintiff bears the burden of proof to defeat qualified immunity. *Cf. United States v. Wyatt*, 16-CR-00057-MSK, 2016 WL 6956632, at *4 (D. Colo. Nov. 29, 2016) (unpublished) (recognizing that "where a 4th Amendment violation occurs but suppression is not warranted, the individual may instead seek civil damages through an action under *Bivens* or 42 U.S.C. § 1983.").

### A.    First Claim

In the FIRST CAUSE OF ACTION (Compl. ¶¶ 46–50) (First Claim), Plaintiff alleges that Defendants "collectively agreed to willfully and wantonly … pursue a search and invasion

of plaintiff's privacy and seizure of property they knew would be unlawful." (*Id.* ¶ 47.) Plaintiff further alleges that Defendants "viewed the search warrant as a mere 'ticket' and color of law to enter the property, and once inside to conduct a general search." (*Id.* ¶ 48.) After obtaining the Warrant, Defendants "conducted a general search and seizure, seizing items regardless of whether they were listed in the warrant or not." (*Id.* ¶ 48.) Plaintiff alleges that as a result the Defendants willfully "violated his Fourth Amendment right to be free from unreasonable searches and seizures, and agreed and conspired with each other to do so." (*Id.* ¶ 49.)

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and person or things to be seized." U.S. Const. amend. IV. To be valid under the Fourth Amendment, a search warrant must meet three requirements:

> (1) it must have been issued by [a] neutral, disinterested magistrate; (2) those seeking the warrant must [have] demonstrate[d] to the magistrate their probable cause to believe that the evidence sought [would] aid in a particular apprehension or conviction for a particular offense; and (3) the warrant must particularly describe the things to be seized, as well as the place to be searched.

*Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)). The Warrant was issued by Magistrate Judge Lynch; therefore, the first requirement is met. In the MOO Denying Summary Judgment (*See supra* note 2), the Court denied Plaintiff's motion for summary judgment to the extent Plaintiff alleged that the Warrant was facially invalid. The Court found that, as a matter of law, the Warrant was sufficiently particular even though the Court did not take the Warrant Affidavit into consideration because it was sealed. Therefore, the third requirement has been met.

To determine whether this Warrant meets the second requirement, the Court must review the Warrant Affidavit to ensure that Magistrate Judge Lynch "had a substantial basis for

concluding that probable cause existed." *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001). "Probable cause means 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Tisdale*, 248 F.3d at 970. However, a district court should give "great deference to a magistrate's finding of probable cause, reversing only if the affidavit supporting the warrant application provides 'no substantial basis for concluding that probable cause existed.'" *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

At the time the Motion was filed, the Warrant Affidavit was under seal. In the Motion, Defendants assert that the Court should defer decision on probable cause until the Warrant Affidavit is unsealed. (Mot. at 12.) The Warrant Affidavit has been unsealed, and the Court now may determine probable cause. However, in footnote 2 of the Response at pp. 2–3, Plaintiff argues:

> Since the Court's prior opinion determined the warrant was not overbroad and sufficiently particular *despite* the lack of any affidavit (Doc. 46 p. 14-17), any arguments or evidence concerning any affidavit would be immaterial as a matter of law. Since defendant Daza's declaration in support of the motion almost exclusively only discusses review of his *affidavit and supporting documents* (*not the warrant itself*), it should be disregarded. Also, the Complaint makes no allegations re: lack of probable cause.

Through this statement Plaintiff appears to have waived claims related to whether there was probable cause to issue the Warrant. However, the Court will address probable cause in light of Plaintiff's *pro se* status and his general attacks on the Warrant.

### 1. Probable Cause

The Warrant Affidavit claims that Plaintiff and Underwood formed NBS to assist Shrock and other clients to evade taxes in violation of 6 U.S.C. § 7201 (attempt to evade taxes) and 18 U.S.C. § 317 (conspiracy). The Warrant Affidavit states that Plaintiff and Underwood used NBS

set up LLCs, obtain EINs, and open bank accounts for those LLCs with only the EINs to allow their individual clients to avoid IRS detection. Between 2005 and 2016, Plaintiff and Underwood organized hundreds of NM LLCs and opened bank accounts for at least fifty LLCs using an EIN only. The Warrant Affidavit identifies services provided to Shrock, including forming White Top, obtaining an EIN for White Top, and opening a bank account using only White Top's EIN. Consequently, assets deposited into the White Top account would be reported to the IRS under White Top's EIN and not under Shrock's personal tax identification number (social security number). Deposits to the account in the amount of $4 million were used for Shrock's benefit. According to the Warrant Affidavit, Shrock has not filed individual tax returns reporting those earnings.

Probable cause exists if "facts and circumstances within the [official's] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Eckert v. Dougherty*, 658 F. App'x 401, 406–07 (10th Cir. 2016). This Court concludes that an objectively reasonable official reviewing the Warrant Affidavit could easily have concluded there was probable cause to search Plaintiff's residence for documents and electronic records containing evidence of an elaborate scheme to help clients evade taxes. Therefore, Defendants are entitled to qualified immunity on the First Claim to the extent the First Claim may assert that the Warrant was not supported by probable cause.

### 2. Execution of the Warrant

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See* U.S. Const. amend. IV. In conducting a search, agents are limited to the scope of the applicable warrant and have a duty to execute a search in a reasonable manner. *United States v.*

*Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993). Failure to execute a search warrant reasonably violates an individual's Fourth Amendment rights. *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985).

In the First Claim, Plaintiff asserts that SA Marshall and SA Hand performed an unlawful "general search" and seized items "regardless of whether they were listed in the warrant or not." (Compl. ¶ 48.) As stated by the Tenth Circuit,

> By 1927, the Supreme Court had held that "[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 … (1927)). And in 1990, the Court explained that "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 … (1990)).

*Bowling v. Rector*, 584 F.3d at 971. Hence, it would have been clear to SA Marshall and SA Hand that seizing items not described in the Warrant was unlawful. *Id.*

In the Motion, Defendants argue: "[A]s no constitutional violation occurred in the execution of the search warrant at Plaintiff's residence, Plaintiff has not provided (and cannot provide) any controlling authority demonstrating that Defendants' particular conduct was in violation of a clearly established right[.]" (Mot. at 19.) Defendants further assert that "Defendants 'acted in an objectively reasonable manner' and are entitled to qualified immunity." (*Id.*) Finally, Defendants maintain that they "were objectively reasonable in executing a valid constitutional search warrant." (*Id.* at 20.)

In response to these arguments, Plaintiff may not rest on his pleadings, but must come forward with some evidence showing a genuine issue for trial supporting the existence of a constitutional violation. *Kannady v. City of Kiowa*, 590 F.3d at 1169 ("If the movant carries this initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts

showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (citation omitted)).

Plaintiff argues that Defendants failed to raise qualified immunity from Plaintiff's First Claim that Defendants executed the Warrant in violation of the Fourth Amendment. (Resp. at 3.) The Court disagrees. Defendants argued that they were "objectively reasonable in executing a valid constitutional search warrant." (Mot. at 20.) Moreover, in the Reply, Defendants argue that Plaintiff has placed no material facts in the record, except "a cursory affidavit filed alongside his Motion for a Preliminary Injunction." (Reply at 3.)[7] Therefore, Defendants raised qualified immunity with regard to the First Claim and Plaintiff's failure to adduce evidence that the Defendant seized items beyond the scope of the Warrant.

First, it is undisputed that SA Daza was not present at the search; therefore, all claims regarding the execution of the Warrant will be dismissed against SA Daza. Second, since SA Marshall and SA Hand have asserted qualified immunity from claims related to the execution of the Warrant, it is incumbent upon Plaintiff to present evidence that items not described in the Warrant were seized. This Plaintiff has failed to do. Defendants have presented the inventory of items seized at Plaintiff's residence along with the Affidavit of SA Crystal Chavez describing the preparation of the inventory and the return of all items listed on the inventory to Plaintiff. SA Chavez included evidence that Plaintiff received the inventory and items that were returned. (*See* Mot. Ex. C (Doc. No. 53-3).) Plaintiff has presented no evidence showing that there were items

---

[7] Plaintiff's affidavit attached to the MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 51-1) contains three paragraphs. The first states that Plaintiff received no notice of "any hearing being required or afforded concerning the seizure of any publications, literature, or writings, that were seized as 'tax defier' materials on March 15, 2017." (*Id.* ¶ 1.) The second states that during the search of his residence "I overheard one agent directing a searching for 'family records'." (*Id.* ¶ 2.) The third states that Plaintiff "observed someone with a camera/video camera, and saw them take a video of the interior of the house. No such recording appears in the warrant 'inventory'." (*Id.* ¶ 3.) The information related in this affidavit provides no support to Plaintiff in his opposition to the Defendants' Motion. Therefore, Defendants rightly argue that Plaintiff has presented no summary judgment evidence to support the denial of Defendants' Motion.

seized at his residence other than those described in the Warrant. Consequently, the Court will grant qualified immunity to Defendants on the First Claim alleging unlawful execution of the Warrant.

B.    Second Claim

1. Probable Cause

In his SECOND CAUSE OF ACTION (Compl. ¶¶ 51–54) (Second Claim), Plaintiff alleges that the seizure of his "computer/electronic records not only violated the Fourth Amendment, but even Fed. R. Crim. P. 41 itself."[8]  (Compl. ¶ 52.) Plaintiff alleges that SA Daza unlawfully "caused the electronic records to be copied for a later unrestricted search for anything at all." (*Id.* ¶ 53.) Plaintiff claims that the Defendants willfully "violated plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures by seizing the electronic equipment and intend on continuing to violate the right by copying the electronic data for their later unrestricted browsing for absolutely anything at all." (*Id.* ¶ 54.) In the MOO Denying Summary Judgment, the Court held that even though the Warrant lacked specific search protocols for electronic data, under Tenth Circuit law the Warrant was sufficiently particular. (MOO Denying Summary Judgment at 20.) The Court also finds that the Warrant to search for and seize electronic storage devices was supported by probable cause that the computers and electronic data at Plaintiff's residence would contain evidence that Plaintiff violated 26 U.S.C. § 7201 and 18 U.S.C. § 371. *See United States v. Christie*, 717 F.3d 1156, 1166 (10th Cir. 2013).

---

[8] Plaintiff does not cite a specific section of Fed. R. Crim. P. 41. The Court finds that Plaintiff has not alleged or presented facts or evidence supporting a finding that Defendants violated Rule 41; therefore, the Court will dismiss this part of the Second Claim. Specifically, Rule 41(e)(2)(B) governs warrants seeking Electronically Stored Information (ESI). This provision sets out the "seize first, search second" two-step rule created for ESI, which was developed because "computer and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location." *See* Fed. R. Crim. P. 41(e)(2) advisory committee's note. *In the Matter of Search of Info. Associated with Email Addresses Stored at Premises Controlled by the Microsoft Corp.*, 212 F. Supp. 3d 1023, 1034–35 (D. Kan. 2016).

SA Daza clearly described how Plaintiff and Underwood used email to communicate about their business, and that in his experience, Daza knew that people who use email also store documents in computers and other electronic devices. In the Warrant Affidavit, SA Daza informed Magistrate Judge Lynch of the probability that computers were in the residence by showing that the internet service to the residence was in Plaintiff's name. SA Daza outlined how Plaintiff and Underwood advertised through a website to gain clients. In sum, this information was sufficient to establish probable cause to believe evidence of tax evasion and conspiracy to commit tax evasion would be found stored in computers and electronic devices.

2. Execution of the Warrant

Plaintiff alleges that Defendants violated the Fourth Amendment when Defendants "caused the electronic records to be copied for a later unrestricted search for anything at all." (Compl. ¶ 53.) Plaintiff contends that even though Defendants were not required to include limiting protocols to use in searching electronic storage devices, "such protocols are *still required after* a seizure of electronics (and obviously before any electronics searches actually begin)." (Resp. at 4) (emphasis in original). According to Plaintiff, "[t]he question to be answered *now* is what search protocols were in fact used, if any, in the defendant(s) conducting whatever searches they made? Defense counsel presents absolutely *zero* evidence on this issue." (*Id.*) (emphasis in original). Plaintiff notes that "since *no one* has been identified as actually conducting any electronic searches, the question also arises as to whether defense counsel has any authority for making arguments for unknown, non-joined party(s)." (*Id.* note 3.) Plaintiff cites *United States v. Christie* for the proposition that the law in this Circuit requires such "*ex post*" protocols prior to examining electronic data. 717 F.3d at 1167. However, *Christie* does not go as far as Plaintiff would like.

The court in *Christie* held that the defendant failed support her motion to suppress with any evidence that the search for evidence in her computer, which was limited by the warrant to evidence "related to the murder, neglect, and abuse of" the defendant's daughter, violated the Fourth Amendment. *Id.* at 1165–1167. The court rejected defendant's argument that the warrant itself had to contain search protocols for proper computer searches. However, the court recognized that the lack of search protocols in a warrant did not mean that the Fourth Amendment has "nothing to say on *how* a computer search should proceed." *Id.* at 1166. The court opined that "the Amendment's protection against 'unreasonable' searches surely allows courts to assess the propriety of the government's search methods (the *how*) *ex post* in light of the specific circumstances of each case." *Id.* (citing *United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness…governs the method of execution of the warrant.")). The court continued: "even if courts do not specify particular search protocols up front in the warrant application process, they retain the flexibility to assess the reasonableness of the search protocols the government actually employed in its search after the fact, when the case comes to court, and in light of the totality of circumstances." *Id.* at 1167. The court in *Christie* concluded:

> To undertake any meaningful assessment of the government's search techniques in this case (the *how*), we would need to understand what protocols the government used, what alternatives might have reasonably existed, and why the latter rather than the former might have been more appropriate. Unfortunately, however, that we do not have in this case. Though Ms. Christie bore the burden of proof in her suppression proceeding, she offered little evidence or argument suggesting how protocols the government followed in this case were unreasonable or insufficiently particular, especially when compared with possible alternatives. Without more help along these lines, we simply cannot assess rationally her challenge to the government's search procedures in this case and must leave the development of the law in this area to future cases.

*Id.* at 1167. Here, Defendants maintain that Plaintiff's claims that the search of electronically stored information was unlawful are "speculative, unconfirmed allegations which are not sufficient to meet a summary judgment burden[.]" (Mot. at 10.)  The Court agrees. It may be inferred that someone has searched Plaintiff's electronic storage devices and copied files from them because all of the devices have been returned to Plaintiff. Yet, Plaintiff has presented no evidence that the electronic storage devices contained information that was beyond the scope of the Warrant.  Instead, Plaintiff relies on the allegations in his Complaint, which are conclusory statements that [s]ince the search warrant contained no limitations, it is the intention of defendants Daza, …, and other unknown parties to rummage through all of the records without any restriction looking for absolutely anything." (Compl. ¶ 37.) These unsupported allegations are insufficient.

As Plaintiff points out, courts may assess the propriety of the government's search methods *ex post* in light of the specific circumstances of each case. According to Plaintiff, this court should determine "what search protocols were in fact used, if any[.]" (Resp. at 4.) Plaintiff contends that Defendants have failed to offer evidence on that issue; therefore, "there is simply insufficient information for making any qualified immunity determination." (*Id.*) It is Plaintiff who has the burden to show a clearly established constitutional violation, and Plaintiff has failed to present any evidence to show that Defendants searched for and obtained evidence not described in the Warrant. Of course, in any criminal proceeding, electronically stored information that is beyond the scope of the Warrant, for instance, showing crimes unrelated to tax evasion or conspiracy to commit tax evasion, may be excluded. *Cf. Voss*, 774 F.2d at 405 (describing dangers of broadly worded warrants allowing the search of electronic records evincing any federal crime instead of the crime of tax fraud). However, because Plaintiff has

failed to meet his burden of proof to defeat Defendants' qualified immunity, the Court will dismiss the Second Claim.

C.      Fourth Claim

In the FOURTH CAUSE OF ACTION (Compl. ¶¶ 57–58) (Fourth Claim), Plaintiff accuses SA Marshall and SA Hand of violating his rights by restricting his liberty to move about the house during the execution of the Warrant. (*Id.*) As Defendants point out, Plaintiff admits that the agents executing the search warrant told him that he was free to leave the house during the search. Plaintiff counters that because he was not allowed to put on clothing, he was not really free to leave. Yet, even if Plaintiff was essentially detained during the search by not being allowed to change clothes, such a detention is constitutionally permissible. *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers* the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705. In *Harman v. Pollock*, 446 F.3d 1069 (10th Cir. 2006), the Tenth Circuit concluded that under *Summers* and *Muehler, et al v. Mena,* 544 U.S. 93 (2005), police officers have a "categorical" authority to detain persons found on the premises subject to a lawful search warrant for "contraband" materials. *Id.* at 1086 (citing *Summers*, 452 U.S. at 705; *Muehler*, 544 U.S. at 98). Because Plaintiff has failed to show that he was unlawfully detained during the search of his residence, the Court will grant Defendants qualified immunity on Claim Four.

D.      Fifth Claim

In the FIFTH CAUSE OF ACTION (Compl. ¶¶ 59–62) (Fifth Claim), Plaintiff alleges that Defendants searched for and seized publications "based solely on their content and ideas they expressed. The defendants obtained a warrant which contained language they knew left it

entirely to the discretion of the searching agents what was to be seized, and they treated it like a general warrant." (*Id.* ¶ 60.) Defendants' actions were done "in plain and clear violation of First Amendment protected Free Speech and Press constitutional limitations." (*Id.* ¶ 61.) Plaintiff claims that Defendant Daza has retained the materials "in order (at least in part) [to] engage in censorship of the materials…. [i]n plain and clear violation of the First Amendment Free Speech and Press constitutional limitations." (*Id.* ¶ 62.)

As discussed in its MOO Denying Summary Judgment, the Warrant allowed agents to seize only books and printed material related to the crimes of tax evasion and related conspiracies. As instrumentalities of crime, such materials are not protected by the First Amendment. *Voss*, 774 F.2d at 406. In addition, Plaintiff has presented no evidence that items seized at his residence lacked relationship to the crimes of tax evasion, attempted tax evasion, or conspiracy to commit tax evasion. Therefore, the Court will grant summary judgment on the Fifth Claim and will dismiss the claim.

E.      Sixth Claim

In his SIXTH CAUSE OF ACTION (Compl. ¶¶ 63–65) (Sixth Claim), Plaintiff alleges that the Defendants collectively agreed to willfully and wantonly "disregard any such limitations and search for and seize any and all information about plaintiff's 'contacts' and people he may know, regardless of purpose. This included family, friends, acquaintances, political affiliations, and anyone plaintiff might know for any purpose." (*Id.* ¶ 64.) In addition, Plaintiff claims that "defendants obtained and executed a warrant which contained language they knew was not anywhere near narrow enough to comply with the precision required by the First Amendment when Associational rights are involved. They then treated it like a general warrant, seized whatever they liked, and turned over the seized items to defendant Daza." (*Id.* ¶ 65.)

To the extent this claim seeks to invalidate the warrant for lack of particularity or probable cause, the Court will grant summary judgment in favor of Defendants. The First Amendment does not prevent a search for items that tend to prove conspirators' associations with each other for illegal purposes. *Voss*, 774 F.2d at 407 (Logan, J. concurring). Moreover, Plaintiff's claim that challenges the manner in which the Warrant was executed will be dismissed. Plaintiff has presented no evidence that Defendants seized information about Plaintiff's associates that was unrelated to the crimes of conspiracy or tax evasion. Therefore, the Court will grant summary judgment on the Sixth Claim.

F.      Seventh Claim

In the SEVENTH CAUSE OF ACTION (Compl. ¶¶ 66–68) (Seventh Claim), Plaintiff alleges that 120 [days] have passed since the search and seizure raid … [Defendants] have made no attempt to contact plaintiff about returning any seized items still in their possession, and have no apparent intention of doing so, resulting in permanent deprivation of the property." (*Id.* ¶ 67.) Plaintiff asserts that the retention of his property "is simply unreasonable under the Fourth Amendment and in violation of it." (*Id.* ¶ 68.)  This issue has been decided. The Court described in its MEMORANDUM OPINION AND ORDER (Doc. No. 38) that as of February 20, 2018, the Government had returned to Plaintiff all items seized under the Warrant either in their physical tangible form or via electronic copy on storage disks. Therefore, summary judgment will be granted and Claim Seven will be dismissed as moot.

G.      Other Matters

In the Motion, Defendants renewed their request to stay discovery pending resolution of the Motion. In addition, Defendants requested that discovery be stayed until the Warrant Affidavit is unsealed. As for Plaintiff's Third Claim challenging the pat-down search of his person by agents executing the Warrant, Defendants ask the Court to allow limited discovery as to that claim. This

ruling disposes of the Motion and the Warrant Affidavit has been unsealed; therefore, discovery may be appropriate on issues related to the Third Claim. The Court will leave it to the parties to work out a discovery plan with presiding Magistrate Judge Laura Fashing.

IT IS ORDERED that DEFENDANT DAZA, HAND, AND MARSHALL'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 53) is granted, and summary judgment will be entered dismissing the First Cause of Action, the Second Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, the Sixth Cause of Action, and the Seventh Cause of Action.

_____
SENIOR UNITED STATES DISTRICT JUDGE